UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

PIERRE-JEAN NGUYEN, HURACAN CAPITAL, LLC,
and SCCSS, LP

               Plaintiffs,               17 Civ. 4153

  -against-                             OPINION

AMERICAN EXPRESS COMPANY,
AMERICAN EXPRESS CENTURION BANK,
STUDIO OTTO NYC, INC., and PASQUALE
DE STEFANO,

               Defendants.

------------------------------------X

A P P E A R A N C E S:

    Attorneys for Plaintiffs

    ROBINSON McDONALD & CANNA LLP
    61 Broadway, Suite 1415
    New York, NY 10006
    By:  Brett G. Canna, Esq.

    Attorneys for Defendants

    STROOCK & STROOCK & LAVAN LLP
    180 Maiden Lane
    New York, NY 10038
    By:  Raymond A. Garcia, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/16/17

**Sweet, D.J.**

Plaintiffs Pierre-Jean Nguyen ("Nguyen"), Huracan Capital, LLC ("Huracan"), and SCCS, LP ("SCCS") (collectively the "Plaintiffs") have moved pursuant to 28 U.S.C. § 1447(c) to remand this action against American Express Company and American Express Centurion Bank (collectively "AmEx" or the "Defendants") to the Supreme Court of the State of New York, New York County (the "State Court"). Plaintiffs also seek an award for costs, expenses, and attorneys' fees incurred because of removal. Based on the facts and conclusions set forth below, the motion of the Plaintiff is granted, and the action is remanded to the State Court. The Plaintiffs' motion for costs, expenses, and attorneys' fees is denied.

## I. Prior Proceedings

Plaintiff initiated this action by filing a Summons and Verified Complaint with the State Court on April 14, 2017, bringing claims against Studio Otto NYC, Inc. and Pasquale De Stefano (the "Other Defendants") and AmEx involving a series of transactions for the sale of luxury leather goods totaling $785,000.

1

On April 21, 2017, after filing the Summons and Verified Complaint with the State Court, Plaintiffs' counsel forwarded by email a copy of the Summons and Verified Complaint to AmEx's in-house counsel. *See* Pls.' Br. Ex. 2. The email provided in relevant part:

> . . . I have attached a copy of the Summons and Complaint that were filed in connection with Mr. Nguyen's claims. Please let me know if you will accept service on behalf of the AmEx Defendants. I will not take any further action on the matter, including service of process, until I hear back from you. . . .

*Id.*, at 1. Plaintiffs' counsel did not receive a reply to this email. On April 26, 2017, Plaintiffs' counsel sent a follow-up email to AmEx's in-house counsel, stating in relevant part:

> I am following up on my last email regarding accepting service of process . . . . Please let me know if you will accept service of process on behalf of the AmEx defendants by the end of the week. If I do not hear from you, I will being [sic] the process of serving the documents on all defendants next week. . . .

*Id.* Ex. 3, at 1. Within one hour, AmEx's in-house counsel replied with the following:

> I am authorized to accept service on behalf of American Express pursuant to a 60 day waiver of service. Please let me know if you are amenable to the waiver of service and I will have it signed when I return to the office tomorrow.

*Id.* Ex. 4, at 1. Plaintiff's counsel responded to this email within one hour, providing:

2

> You can send me a copy of the form of waiver tomorrow when you get back for me to look at. But, this is in NY State Court, so we may want to do a stipulation. I assume you are asking for 60 days to respond to the Complaint (which I do not see as a problem). We can discuss further when you are back in the office tomorrow . . . .

*Id.* A formal stipulation (the "Stipulation") memorializing the agreement concerning acceptance of service and AmEx's two-month time period to respond to the Verified Complaint was electronically filed by counsel for AmEx in State Court on May 3, 2017. *Id.* Ex. 5. The Stipulation provides that AmEx "hereby accept service of the Summons and Verified Complaint in [this case] and waive any defense based upon service of process." *Id.* The Stipulation also provides that "Defendants['] . . . time to respond with respect to the Summons and Verified Complaint has been extended up to and including June 27, 2017." *Id.*

On June 2, 2017, AmEx filed a Notice of Removal (the "Notice of Removal") pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 and the action was removed to this Court. *See* Notice of Removal, ECF No. 1.

The instant motion to remand was heard and marked fully submitted on December June 30, 2017.

3

## II. **The Motion to Remand is Granted**

The Plaintiffs' motion to remand the case to State Court is granted in light of AmEx's failure to timely file the Notice of Removal pursuant to 28 U.S.C. § 1446 and to obtain consent from all defendants party to the action, as required by § 1446(b)(2)(A).

### a. AmEx Failed to Timely File the Notice of Removal

The parties dispute whether AmEx filed its notice of removal in a timely fashion. Under 28 U.S.C. § 1446(b)(1), a "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." The defendants shoulder the burden of establishing whether removal was proper, *see Hodges v. Demchuk*, 866 F. Supp. 730, 732 (S.D.N.Y. 1994); *see also R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) ("the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof"), and the 30-day deadline to

4

file removal is "rigorously" enforced. *See Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991). A defendant's failure to file within this 30 day period requires remand back to state court. *See Brooklyn Hosp. Center v. Diversified Info. Techs.*, 133 F. Supp. 2d 197, 200 (E.D.N.Y. 2001). As a general matter, district courts must "construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l Inc.*, 28 F.3d 269, 274 (2d Cir. 1994).

AmEx filed its Notice of Removal on June 2, 2017, less than thirty days following the entrance of the Stipulation on May 3, 2017, but more than thirty days after the parties engaged in email correspondence on April 26, 2017. The Plaintiffs contend that the April 26, 2017 email agreement between counsels was a valid stipulation in which AmEx acknowledged and accepted the April 26, 2017 service of the Summons and Verified Complaint. Pls.' Reply Br. 3. Plaintiffs further argue that AmEx accepted service on April 26, 2017 "as no later service was made or attempted on AmEx." *Id.* AmEx argues that the April 26, 2017 email communications did not constitute a final binding agreement because the parties had no intention of being bound prior to the execution of the Stipulation on May 3, 2017. Defs.' Br. 4-6. Interestingly, AmEx apparently asserts that the Stipulation was effective as of April 26, 2017 with regard to

5

their requested 60 day waiver of service (as evidenced by the language that "Defendants['] . . . time to respond with respect to the Summons and Verified Complaint has been extended up to and including June 27, 2017," Pls.' Br. Ex. 5), but as of May 3, 2017 with regard to the date of service at issue here.

Accordingly, in this case, the parties disagree as to whether a binding contract was formed by the April 26, 2017 emails between counsels for Plaintiffs and AmEx. This Court therefore must determine, under New York law, whether a contract was formed by way of the April 26, 2017 email exchange, and if so, whether that contract is enforceable.

Under New York law, courts distinguish "between a 'preliminary agreement contingent on and not intended to be binding absent formal documentation,' which is not enforceable, and a 'binding agreement that is nevertheless to be further documented,' which is enforceable with or without the formal documentation." *Kowalchuk v. Stroup*, 61 A.D.3d 118, 123 (1st Dep't 2009) (quoting *Hostcentric Tech., Inc. v. Republic Thunderbolt, LLC*, 2005 WL 1377853, at *5 (S.D.N.Y. 2005)). "The former is established by a showing that a party made an explicit reservation that there would be no contract until the full formal document is completed and executed." *Id.* However, "the

6

mere fact that the parties intended to draft formal [] papers is *not alone* enough to imply an intent not to be bound except by a fully executed document." *Id.* (emphasis in original); *see also Trolman v. Trolman, Glaser & Lichtman, P.C.*, 114 A.D.3d 617, 618 (1st Dep't. 2014) (An "agreement [is] not rendered ineffective simply because . . . it stated that the parties would promptly execute formal [] papers.") (internal citations omitted).

Here, neither party made any reservation in the email communication that there would be no agreement until the Stipulation was formalized. Indeed, in response to AmEx counsel's email that she is "authorized to accept service on behalf of American Express pursuant to a 60 day waiver of service," Plaintiffs' counsel responded "I assume you are asking for 60 days to respond to the Complaint (which I do not see as a problem)." *See* Pls.' Br. Ex. 4. Absent any language suggesting that the agreement was contingent on other factors, the April 26, 2017 email communications demonstrate a binding agreement, effective as of that date.

Moreover, the language of the Stipulation itself strongly suggests that AmEx accepted service on April 26, 2017. Regarding the 60 day waiver of service raised by AmEx's counsel, the Stipulation provides that AmEx's "time to respond with

7

respect to the Summons and Verified Complaint has been extended up to and including June 27, 2017." *See* Pls.' Br. Ex. 5. Curiously, this date is 60 days from April 26, 2017 – not from May 3, 2017. AmEx appears to want to have its cake and eat it too by suggesting that the dates of acceptance of service and waiver of service are different, even though both arose from the same email communications.

Thus, in light of this Court's duty to "resolv[e] any doubts against removability," *see Lupo*, 28 F.3d at 274, and because AmEx did not timely file its notice of removal, this case is remanded to State Court.

b. <u>AmEx Failed to Obtain Written Consent From All Defendants for Proper Removal</u>

Additionally, the Plaintiffs' assert that this action must be remanded due to AmEx's failure to obtain written consent for removal from the Other Defendants pursuant to Section 1446(b)(2)(A) (the "Unanimity Rule" or the "Rule"). The Unanimity Rule provides that "when a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." *See* 28 U.S.C. § 1446(b)(2)(A); *see also*

Wright & Miller, 14B Fed. Prac. & Proc. Juris. 3d § 3723 ("[A] cardinal rule is that . . . all defendants must join in the notice of removal."). Moreover, a defendant cannot cure such a defect by belatedly submitting written consent from co-defendants as "the time for consent has long passed." *Metropolitan Transp. Authority v. U.S. Fidelity & Guar. Co.*, No. 14 Civ. 9059 (PAE), 2015 WL 1730067, at *5 (S.D.N.Y. 2015). Indeed, "[c]ourts have very little discretion — if any — to forgive a failure to comply with the rule of unanimity." *Bank of Am. v. Angona*, No. 14-CV-1643 (JG), 2014 WL 1515559, at *3 (E.D.N.Y. 2014).

The Plaintiffs argue that AmEx's failure to obtain consent from the Other Defendants violates the Unanimity Rule and requires this Court to remand the case. AmEx contends that this action is excepted from the Unanimity Rule. Specifically, AmEx argues that § 1441(c) creates a carve-out to the Rule by providing that a defendant need not seek consent to remove where the action consists of a claim supported by this Court's original jurisdiction and a state law claim not supported by supplemental jurisdiction. *See id.* § 1441(c)(2). AmEx contends that this Court does not have supplemental jurisdiction over the Plaintiffs' state law claims against the co-defendants, so AmEx

9

was not required to obtain consent from the co-defendants prior to removal.

The parties do not dispute that AmEx did not obtain consent from the co-defendants prior to filing for removal. Thus, whether the law requires this case be remanded turns on whether there is supplemental jurisdiction over the state law claims. *See Caro v. Bank of Am., N.A.*, No. 5:14CV38, 2014 WL 2818672, at *3 (N.D.W. Va. June 23, 2014) (finding that the Unanimity Rule continues to hold full force where a state law claim comes within the court's supplemental jurisdiction); *see also Brooks v. Foglio*, No. 13-2504 (JEI/JS), 2013 WL 3354430, at *5, (D.N.J. July 2, 2013) (holding that when the court has supplemental jurisdiction over an action "the exception to the unanimity rule provided in § 1441(c) does not apply").

A district court has "supplemental jurisdiction over all claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy . . ." 28 U.S.C. § 1367(a). Federal-law and state-law claims form part of the same case or controversy where they "'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon Univ. v.*

10

*Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (alteration in original)). "This is so even if the state law claim is asserted against a party different from the one named in the federal claim." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004).

Here, the underlying action involves a series of transactions for the sale of goods totaling $785,000. The Plaintiffs attempted to purchase certain luxury leather goods from the Other Defendants using charge cards issued by AmEx. Once the Plaintiffs did not receive the ordered goods from the Other Defendants, they reported this to AmEx to dispute the charges. AmEx refused to reverse the disputed charges on the Plaintiffs' charge card accounts and instituted collection efforts against the Plaintiffs. In light of this, the Plaintiffs brought a federal claim against AmEx for violation of the Fair Credit Billing Act, as well as state law claims for breach of contract and violation of New York General Business Law § 349 against AmEx and breach of contract and fraud claims against the Other Defendants.

These facts establish that the federal and state claims arise out of the same common nucleus of operative fact –

11

the series of underlying transactions. The Plaintiffs' individual claims against each defendant are bound to share overlapping facts. Indeed, if it is determined that the contract between the Plaintiffs and the Other Defendants was fulfilled and the goods were delivered, then all claims may be resolved on this determination. Further, it is reasonable that the Plaintiffs brought this single action against AmEx and the Other Defendants in the name of judicial economy as all the claims depart from the same factual scenario.

Thus, because this Court has original question jurisdiction over the Plaintiffs' federal law claims and supplemental jurisdiction over all of the Plaintiff's state law claims, the exception to the Unanimity Rule does not apply. *See Bank of Am.*, 2014 WL 2818672, at *4. Accordingly, because AmEx did not obtain consent from the co-defendants to remove this action to federal court, the case is remanded to State Court.

### III. **The Plaintiffs' Request for Attorneys' Fees is Denied**

The Plaintiffs seek an award of costs and attorneys' fees incurred as a result of AmEx's improper removal of this action. Under 28 U.S.C. § 1447(c), a district court remanding an action to state court "may require payment of just costs and any

actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacks an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "A basis for removal is 'objectively reasonable' if the removing party had a colorable argument that removal was proper." *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 407 (S.D.N.Y. 2014). "In practice, if lack of jurisdiction was not obvious from the face of the removal petition and no other unusual circumstances obtain, a court cannot conclude that an objectively reasonable basis was lacking." *Little Rest Twelve, Inc. v. Visan*, 829 F. Supp. 2d 242, 245 (S.D.N.Y. 2011) (citation omitted).

Although AmEx failed to timely file its notice of removal within the 30 day deadline, it was not objectively unreasonable for AmEx to believe that the clock for filing the Notice of Removal began to run as of the date of the formal Stipulation. Moreover, it was not objectively unreasonable for AmEx to infer that the claims against the Other Defendants were not supported by supplemental jurisdiction. Accordingly, AmEx did not lack an "objectively reasonable" basis for seeking removal, so an award of costs and attorneys' fees to the

13

Plaintiffs' is not appropriate. *See Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 472 (S.D.N.Y. 2006) ("The mere fact that the defendant fails to carry his burden does not of itself require an award of costs to the plaintiff.").

IV. **Conclusion**

The Plaintiffs' motion is granted and the action is remanded to the State Court.

It is so ordered.

**New York, NY**
**October 13, 2017**

_____
ROBERT W. SWEET
U.S.D.J.